**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>    CORPORATE RESOURCE<br>    SERVICES, INC., *et al.*,<br><br>                        Debtors. | <u>FOR PUBLICATION</u><br><br>Chapter 11<br><br>Case No. 15-12329 (MG)<br><br>(Jointly Administered) |
| JAMES S. FELTMAN, not individually but solely in his capacity as Chapter 11 Trustee of the Estate of Corporate Resource Services, Inc., *et al.*<br><br>                        Plaintiff,<br><br>           v.<br><br>CULMIN STAFFING GROUP, INC.,<br><br>                        Defendant. | Adv. Pro. Case No. 18-01008 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION IN LIMINE TO STRIKE DEFENDANT'S EXPERT REPORT**

*A P P E A R A N C E S :*

TOGUT, SEGAL & SEGAL LLP
*Attorneys for James S. Feltman, Not Individually but Solely in His Capacity as Chapter 11 Trustee of Corporate Resource Services, Inc., et al.*
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
By:    Neil Berger, Esq.
          Patrick Marecki. Esq.

GIORDANO, HALLERAN & CIESLA
*Attorneys for Defendant Culmin Staffing Group, Inc.*
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701-6777
By:    Donald F. Campbell, Jr., Esq.
          Christopher J Marino, Esq.

1

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

James S. Feltman, the Chapter 11 trustee (the "Plaintiff" or "Trustee") of the above-referenced debtors (the "Debtors"), moves to strike the opinions, testimony, and rebuttal report of James D. Gardner ("Gardner"), the sole purported expert proffered by defendant Culmin Staffing Group, Inc. ("Culmin"), from use at the trial in this adversary proceeding. ("Trustee's Motion to Strike," ECF Doc. # 42.) Culmin filed an opposition to the motion. (Culmin's Brief in Opposition to Trustee's Motion to Strike, "Culmin's Opposition," ECF Doc. # 52.) The Trustee filed a reply, largely reiterating the arguments made in the Trustee's Motion to Strike. ("Reply," ECF Doc. # 56.) Culmin has demanded a jury trial and has a motion to withdraw the reference pending in the district court. In considering this motion, the Court assumes that this case will be tried to a jury in the district court.

For the reasons explained below, the Court grants in part and denies in part the Trustee's pretrial *Daubert* motion.

## I. BACKGROUND

### A. Trustee's Motion to Strike

This case concerns the value of CRS's Florida business (the "Florida Business") which was transferred to Culmin pursuant to the prepetition Asset Purchase Agreement between CRS and Culmin, dated March 2, 2015 (the "APA"). On April 3, 2019, the Trustee's testifying expert in this case, Manish Kumar ("Kumar") of Goldin Associates, LLC, submitted a written report (the "Kumar Report" or "Goldin Report") detailing his opinions that, as of the March 16, 2015 APA closing date: (i) the going concern value of the CRS Florida Business acquired by Culmin was between $9.2 - $11.6 million and (ii) the orderly liquidation value of the CRS Florida Business acquired by Culmin was between $4.0 - $5.5 million. According to the Trustee, Culmin paid a total of $4,700 for the Florida

2

Business plus a $25,000 escrow to Focus Management Group USA, Inc., which was never released to the Debtors.

On May 13, 2019, Gardner submitted the Gardner Report. The report really encompasses two separate parts—Gardner's criticism and attack on the Goldin Report, *and* Gardner's opinion that the "value for the assets contained in the APA is $113,000." The Trustee contends that Gardner's valuation is remarkably low for assets which in 2014 were allegedly responsible for approximately $38 million in revenue and $2 million in EBITDA. Kumar's June 3, 2019 rebuttal report (the "Kumar Rebuttal Report") challenges Gardner's valuation. But, for the most part, the *Daubert* motion and Culmin's opposition deal with Gardner's valuation conclusion rather than with Gardner's criticism of the analysis and conclusions in the Goldin Report.

As explained below, the Court grants the *Daubert* motion with respect to Gardner's opinion of value ($113,000) because Gardner's methodology—particularly his reliance on EBITDA figures taken from a publication with which he was unfamiliar and conducted no independent diligence—was unsupportable. On the other hand, the Court denies the *Daubert* motion with respect to Gardner's criticism of the analysis and conclusions in the Goldin Report.

The Trustee argues that Gardner is unqualified to provide expert valuation testimony. It is undisputed that Gardner has no experience relating to the staffing industry in which CRS operated and in which Culmin operates. The Trustee also contends that Gardner has "no professional, industry or academic credentials" relevant to the task undertaken. The Trustee alleges that Gardner's sole qualification is his "decades-long close friendship with Jeff Raymond ('Raymond'), Culmin's CEO, and the deep financial interests shared between them – indeed, in the last few years Gardner has earned hundreds of thousands of dollars in compensation from his work for Raymond's affiliated companies." (Trustee's Motion to Strike at 2-3.) The Trustee argues that Gardner's

3

connection to Raymond disqualifies him from acting as an expert in this case.

The Trustee also challenges Gardner's methodology. According to the Motion:

> the Gardner Report: (i) valued only those customers actually retained by Culmin, instead of valuing the assets acquired by Culmin pursuant to the APA; (ii) uses a mix of valuation dates for different purposes to artificially manufacture as low a valuation as possible; (iii) provides knowingly false opinions concerning termination letters allegedly sent to APA customers; and (iv) omits a host of critical information and disclosures that are required by applicable valuation standards and the Federal Rules of Civil Procedure (the "Federal Rules").

(Trustee's Motion to Strike at 3.)

Gardner admitted in his deposition that in arriving at his opinion of value, he used the exact EBITDA range taken from the article and that neither he nor anyone else attempted to verify the authors' methodology.[1]

### B. Culmin's Opposition to Motion to Strike

Culmin's Brief in Opposition to Trustee's Motion to Strike (Culmin's Opposition) argues that Gardner prepared his report based on his decades of experience in evaluating companies. Gardner testified in his deposition that his area of expertise is "corporate finance, financial management, cash forecasting, assisting companies with obtaining financing, valuation and other chief financial operating activities."

Gardner testified that he graduated with a bachelor's degree in Arts from Wartburg College in Waverly, Iowa in 1974, obtained a Master's degree in Business Administration from Fairleigh Dickinson University in 1988, and Masters of Science in Management from Stanford University in 1988. Currently, Gardner is the President of Gardner Consulting, a consulting company that advises small to medium sized businesses on obtaining financing, management

---

[1] Gardner testified that there is no way of verifying how the authors reached these multiples, other than calling them and asking, which neither he nor anyone else did. (Gardner Deposition Transcript, ECF Doc. # 42-8 at 151:4–153:14.)

4

reporting, accounting and valuation.

Gardner testified that he has over 45 years of work experience, 20 of which is with companies where he was required to perform valuation work. He asserts that he has performed approximately 75 valuations for a venture capital firm. He also asserts that he has reviewed and analyzed hundreds of business plans, prepared discounted cash flow analyses, and performed at least annual valuations of the companies in which the venture capital firm for whom he did his work invested during the periods from 2010-2013 and 2016 to present. He also testified that he performed 50 to 100 analyses of business plans where companies were seeking investments, including his work reviewing business plans, assessing financial forecasts, creating valuation models, making adjustments based on experience, reviewing margins, capital intensity and working capital requirements, and developing cost of capital based on cost of equity, determining after-tax costs of debt, free cash flows, and discounted cash flows.

Gardner's criticism and analysis of the Goldin Report is, in the Court's view, "fair game." The trier of fact may credit or reject the criticism. It reflects Culmin's theory of the case, what it bought from CRS, and what reasonable assumptions could be made about future cash flows from the acquired business. Gardner criticizes the assumptions and data that Kumar used in arriving at his opinion. To that extent, the *Daubert* motion is denied. But, to the extent the Gardner purports to express his own opinion on value, the Gardner report and his testimony fail to satisfy the standards required for permissible expert testimony under *Daubert* and its progeny, and to that extent, the *Daubert* motion is granted.

## II.    LEGAL STANDARD

### A.    Motions in Limine

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are

definitely set for trial, without lengthy argument at, or interruption of, the trial." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005) (quoting *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir.1996)). "However, evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 CIV. 3255, 2012 WL 2568972, at *2 (S.D.N.Y. July 3, 2012) (internal quotation marks and citations omitted). Further, the Court may reserve judgment on the motion until the appropriate factual context is developed at trial. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

### B. Relevance Under Rules 401 and 402

Federal Rule of Evidence ("Rule") 402 provides that relevant evidence is admissible. Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Rule 401's bar is fairly low, and an "incremental effect" is "sufficient" to clear it. *See, e.g.*, *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014); *Fed. Hous. Fin. Agency v. Nomura Holding America, Inc.*, 74 F.Supp.3d 639, 651 (S.D.N.Y. 2015) (holding that evidence "need not be conclusive in order to be relevant. An incremental effect is sufficient.") (citing *Certified Envtl. Serv.*, 753 F.3d at 90)); *United States v. White,* 692 F.3d 235, 246 (2d Cir. 2012) (explaining that Rule 401 prescribes a "very low standard") (citing *United States v. Al-Moayad,* 545 F.3d 139, 176 (2d Cir. 2008)).

### C. Rule 702

Rule 702 permits opinion testimony from a "witness who is qualified as an expert by knowledge, skill, experience, training, or education." FED. R. EVID. 702. As the Supreme Court has explained, expert testimony admissible under Rule 702 "rests on a reliable foundation and is

6

relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

The *Daubert* standard applies to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Testimony must be reliable, which requires the Court to perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. The Second Circuit has held that:

> In assessing reliability, "the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case.

*United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 265 (2d Cir. 2002).

Courts have frequently excluded expert reports where the purported expert did not independently perform the test central to his or her testimony, but instead relied on the work of others. *See e.g. In re Rezulin Prod. Liab. Litig.*, 441 F. Supp. 2d 567, 577 (S.D.N.Y. 2006) (excluding expert reports relating to a product's potential effects on liver enzymes, where the doctor did not measure the liver enzymes or their effects); *see also JRL Enterprises, Inc. v. Procorp Assocs., Inc.*, 2003 WL 21284020, at *8 (E.D. La. June 3, 2003) (excluding expert who did "no independent analysis" of report he relied on).

The district court in *JRL Enterprises*, 2003 WL 21284020, at *8, relied on the Tenth Circuit's decision in *TK-7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732 (10th Cir. 1993), where the court explained that Rule 703 "is certainly not satisfied in this case, where the expert failed to demonstrate any basis for concluding that another individual's opinion on a subjective financial

7

prediction was reliable."[2] In *TK-7 Corporation*, the court held that one expert could not rely on the figures calculated by another expert where the proffered expert did not conduct any investigation of the other expert's figures. "[T]he fact that [the expert] relied upon the report did not relieve the plaintiffs from their burden of proving the underlying assumptions contained in the report." *TK-7 Corp.,* 993 F.2d at 732.

Reliance on reports prepared by others is a particular issue here because Gardner relied on EBITDA multiples taken from an article written by Sam Sacco and Brian Kennedy. That article is, of course, hearsay, and to be admissible as a basis for Gardner's opinion about value, Evidence Rule 703 must be satisfied. Gardner does not know either author, he is not aware of their valuation credentials, and he does not know anything about their valuation experience. Applying the EBITDA multiple from this article, Gardner arrived at his $113,000 value. *See* Gardner Deposition Transcript at 134:6–142:3, ECF Doc. # 42-8. As the opinion in *TK-7 Corporation* explained:

> Hearsay is normally not permitted into evidence because the absence of an opportunity to cross-examine the source of the hearsay information renders it unreliable. Rule 703 permits experts to rely on hearsay, though, because the expert's "validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes." Rule 703, *Advisory Committee Notes.* That rationale is certainly not satisfied in this case, where the expert failed to demonstrate any basis for concluding that another individual's opinion on a subjective financial prediction was reliable, other than the fact that it was the opinion of someone he believed to be an

---

[2]    Rule 703 provides as follows:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

FED. R. EVID. 703.

8

>expert who had a financial interest in making an accurate prediction. Dr. Boswell's lack of familiarity with the methods and the reasons underlying Werber's projections virtually precluded any assessment of the validity of the projections through cross-examination of Dr. Boswell. *Cf. In re: James Wilson Associates,* 965 F.2d 160, 173 (7th Cir.1992) (The judge must make sure that the expert isn't being used as a vehicle for circumventing the rule against hearsay.) Moreover, while Boswell testified that he considered the Werber study reliable and adequate, there was no evidence that other experts in his field would rely on such a study and would adopt it for purposes of forming an opinion of the amount of lost profits of an unestablished business. *Cf. Wilson v. Merrell Dow Pharmaceuticals, Inc.,* 893 F.2d 1149, 1153 (10th Cir.1990) (Information must be of a type reasonably relied upon by others in the witness' field of expertise.); 3 J. Weinstein & M. Burger, *Weinstein's Evidence* ¶ 703[03] at 703–25 (1988) (The rule implicitly requires that the information be viewed as reliable by some independent, objective standard beyond the opinion of the individual witness.). The record simply does not support appellants' contention that the use of the Werber projections was proper under Rule 703.

993 F.2d at 732–33.

Testimony must also be relevant, which means it must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591–92. Still, the inquiry is a flexible one and it is not necessary to evaluate every specific factor in every case. *Id.* The reliability of a proposed expert's testimony "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93.

In *Daubert*, the Supreme Court identified factors that may bear upon the reliability of proposed scientific testimony, including: (i) whether the theory or technique can be, and has been, tested; (ii) whether it has been subjected to peer review and publication; (iii) the known or potential error rate of the technique; (iv) the existence and maintenance of standards controlling the technique's operation; and (v) whether the technique or theory has gained widespread

9

acceptance in the relevant scientific community. *Id.* at 593-94 (noting that these factors do not constitute "a definitive checklist or test"). In *Kumho Tire Co.*, 526 U.S. at 141, the Supreme Court held that a court may apply the *Daubert* factors, as appropriate, in cases dealing with technical or "other specialized," but non-scientific, testimony.

The party seeking to admit an expert bears the burden of demonstrating admissibility by a preponderance of the evidence. *See id.* at 160–61; *see also Lippe v. Bairnco Corp.*, 288 B.R. 678, 685–87 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004).

In order to be admissible, "[a]n expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006), *aff'd on other grounds*, 552 U.S. 312 (2008). "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method" does not itself require exclusion; exclusion is only warranted "if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 at 267 (citation and quotation marks omitted). "[O]ur adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Id*. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

Relevance is a low bar, but it still must be satisfied. The Court must find that the expert testimony would be relevant in assisting the trier of fact's determination of value. But each side is permitted to provide relevant evidence to support its plausible theory of the case.

### III.    DISCUSSION

The Trustee's arguments to strike Gardner's testimony center around Gardner's lack of experience providing litigation valuation services and the lack of textual authority for Gardner's

opinion and methodologies.

Gardner's lack of experience in litigation is not disqualifying; work experience can and often does provide a proper basis for required expertise. Gardner testified about his many years of experience in financial analysis and valuation services; this experience clearly satisfies the threshold required to permit Gardner to testify as an expert in this case. These critiques go to the weight the trier of fact should give to Gardner's testimony rather than to its admissibility.

Gardner should not be disqualified because he does not have the expertise of valuing staffing companies or the narrow disputes in this lawsuit. The lack of industry-specific experience is not disqualifying. *See, e.g., Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 82 (2d Cir. 1997) (reversing lower court decision to preclude expert testimony on the ground that he was unqualified "because his expertise was insufficiently tailored to the facts of this case" and noting that "it is error to exclude" experts with "more general qualifications"); *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 308 (S.D.N.Y. 2015) (finding a valuation expert qualified to value a company even though the expert lacked experience in the specific industry because a "court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent") (quoting *Arista Records LLC v. Lime Group LLC*, No. 06-cv-5936 (KMW), 2011 WL 1674796, at *3 (S.D.N.Y. May 2, 2011)).

Gardner's deposition testimony supports Culmin's argument that Gardner's work experience provided a sound basis for Gardner's analysis, at least with respect to his criticism of the Goldin Report. Gardner provided a plausible explanation why it was improper for Kumar to value the business based on all customers previously supported by CRS in the offices that Culmin acquired rather than based only on the customers retained by Culmin. Culmin was not licensed to provide certain personal employment services, there were no non-compete or non-

11

solicitation agreements with customers of CRS, and numerous termination letters were issued by CRS customers before Culmin's acquisition. (Culmin's Opposition at 7.) Gardner also testified that he believed that Kumar used unreasonable projected revenue growth in his valuation analysis. (*Id.*) The Trustee may challenge Gardner's assumptions, but Gardner's expert testimony supports a viable theory of the case that the finder of fact is free to accept or reject. The portion of Gardner's testimony criticizing Kumar's testimony and the Goldin Report is admissible.

The lack of any support for Garner's methodology in deriving and expressing his opinion of value is more troublesome. Gardner essentially admitted that his valuation relied exclusively on EBITDA multiples taken from an article prepared by others, with no independent diligence as to the reasonableness of the numbers or their applicability to the circumstances of this case; this is disqualifying. The applicable law explained by the Tenth Circuit's decision in *TK-7 Corp.,* 993 F.2d at 732–33, discussed above, applies here. Therefore, Gardner's opinion on value is not admissible.

The remainder of the Trustee's arguments challenging Gardner's opinions are proper subjects for cross-examination but do not support striking Gardner's proposed testimony. The Trustee's argument about Gardner's alleged conflict of interests is not disqualifying, although it certainly provides substantial grist for cross-examination.

### IV.    CONCLUSION

For the reasons explained above, the Trustee's Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**. To the extent the motion is denied, this Court's ruling only means that Gardner may be permitted to provide opinion testimony challenging the assumptions, analysis and conclusions in the Goldin Report and in Kumar's testimony. The trial judge, of course, will

have to resolve objections at trial to specific testimony by Gardner as the factual context is developed at trial. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

    **IT IS SO ORDERED.**

Dated:    August 22, 2019
            New York, New York

                                          *Martin Glenn*
                                          MARTIN GLENN
                                United States Bankruptcy Judge